632 A.2d 925

**COMMONWEALTH of Pennsylvania**

v.

**Will WHITEHEAD, Appellant.**

Superior Court of Pennsylvania.

Submitted Sept. 7, 1993.

Filed Nov. 8, 1993.

Norris E. Gelman, Philadelphia, for appellant.

Kathy L. Echternach, Asst. Dist. Atty., Philadelphia, for Com., appellee.

Before McEWEN, BECK and FORD ELLIOTT, JJ.

FORD ELLIOTT, Judge:

If you strike a child, take care that you strike it in anger ... A blow in cold blood neither can nor should be forgiven.
George Bernard Shaw, *Man and Superman,* act IV (1903).

Confronted by thousands of criminal appeals a year, involving matters including rape, assault, and murder, this court is often asked to review cases concerning very disturbing events. As a result, it is sometimes possible to become desensitized to the extremely horrific nature of some of the events underlying these appeals. Occasionally, a case makes its way through this court whose facts are so upsetting that one cannot help but reflect upon the truly depraved nature of the act and shed a tear for the victim. This is one such case and the victim was of the most innocent and vulnerable, a child. A nine-month old baby, to be exact, named Raymond Guess. Raymond was the victim of unusually cruel and senseless acts of violence by appellant, Will Whitehead; and unfortunately no matter how many tears are shed for Raymond, nothing can be done to erase the pain he must have suffered at the hands of appellant on the day he died.

Raymond was the nine-month old son of Tovarria Guess, a nineteen-year-old single mother. Ms. Guess and appellant had met approximately four months prior to the date of the murder. The record indicates that Ms. Guess desired a sexual relationship with appellant and wrote him numerous letters to

that end.  In a letter dated June 24, 1991, Ms. Guess described, in detail, the sexual liberties she would allow appellant to take with her.  The letter also includes a reference to appellant's torturing Raymond as part of their lovemaking. Several days after this letter, while appellant and Ms. Guess were on a date, appellant fractured Raymond's leg by twisting it.  Appellant also punched Raymond in the chest and poked him in the eyes.  At the hospital, Ms. Guess told medical personnel that Raymond was injured when her girlfriend accidentally slipped him through her legs while bouncing him on her lap.  Several days after breaking her son's leg, Ms. Guess wrote to appellant and forgave him.

On July 14, 1991, Ms. Guess again wrote appellant a sexually explicit letter.  To paraphrase Ms. Guess' query, she asked appellant if he would like to spend the weekend with her if she let him body slam her son.  (Trial transcript, 6/17/92 at 87.) Tragically for Raymond, appellant accepted Ms. Guess' offer.

On July 25, 1991, appellant went to Ms. Guess' home in Philadelphia.  No one else was home at the time.  Appellant and Ms. Guess sat in the living room as she rocked Raymond to sleep.  Ms. Guess then handed Raymond to appellant. Appellant started to rock Raymond but then unleashed a violent attack on the baby.  Appellant threw Raymond to the floor, punched him in the legs, picked the baby up, and threw him on the floor again.  Appellant repeated this despicable process several times as Ms. Guess watched.  Eventually, noticing that Raymond was bleeding from the mouth, Ms. Guess asked appellant to stop.  Ignoring Ms. Guess, appellant continued his assault.

Finally, Ms. Guess grabbed Raymond from appellant and took him upstairs and laid him in his crib.  At that point, appellant and Ms. Guess engaged in intercourse.  After the sexual encounter, Ms. Guess left the room to answer the telephone.  Appellant seized the opportunity to continue his assault upon a helpless Raymond.

Appellant removed the sleeping baby from his crib and threw Raymond into the air.  Raymond bounced off the bed

and fell to the floor. Appellant picked Raymond up and did this a second time. Appellant again picked Raymond up off the floor and beat him in the legs and face. Next, in what can only be described as a barbaric act of violence, appellant took Raymond and, using the baby as a battering ram, slammed Raymond's head against the bedroom wall four times. When Ms. Guess re-entered the room, appellant tossed Raymond back into his crib. Raymond lay unconscious in his crib, not breathing. Ms. Guess successfully administered CPR, and Raymond resumed breathing. Then, unbelievably, appellant and Ms. Guess decided to resume intercourse.

Soon after this sexual encounter, Ms. Guess' father returned home. When he found appellant in his house, he called the police to have him removed.[1] After appellant left, Ms. Guess went to check on Raymond. By this time, Willie Guess had left the home again to pick up Tovarria's mother from work. Ms. Guess attempted to resuscitate Raymond but with no success. When her parents arrived home, Ms. Guess informed them that Raymond had fallen from a chair and stopped breathing. An ambulance was summoned, and Raymond was transported to Children's Hospital of Philadelphia. Raymond was pronounced dead at 2:41 p.m. on July 25, 1991. The cause of death was blunt force trauma to the head.

That same day both appellant and Tovarria Guess were arrested and charged with murder and criminal conspiracy. Appellant offered a statement to the police detailing the savage beating he had inflicted upon Raymond. Additional charges were filed against appellant, including aggravated assault, simple assault, and recklessly endangering another person. Appellant wisely entered a plea of guilty generally to all charges. A degree of guilt hearing was commenced as to the murder charge. Appellant was found guilty of first degree murder and sentenced to life imprisonment. Appellant was

1. Willie Guess, Tovarria's father, was not aware of the assault on his grandson but called police because appellant was an unwelcome guest in the house. Willie Guess told police when they arrived that appellant had broken into the house, but after Tovarria informed the police that she invited appellant in, he was promptly released and the police left the residence.

also sentenced to concurrent sentences of three to six years for aggravated assault and two to four years for criminal conspiracy. This appeal followed.[2]

Presently, appellant raises the following issue for our consideration:

Was trial counsel ineffective for failing to urge in written post-trial motions the inconsistency of the verdicts returned as between appellant and his co-defendant in that appellant was convicted of first degree murder and his co-defendant was convicted of third degree murder?

To substantiate a claim of ineffectiveness, appellant's underlying issue must be of some arguable merit. *See Commonwealth v. Davis*, 518 Pa. 77, 541 A.2d 315 (1988). Here, there is no merit to the argument that appellant was improperly convicted of first degree murder while his co-defendant, Ms. Guess, was only convicted of third degree murder. Given the facts of this case, such verdicts are not necessarily inconsistent since it was appellant who administered the savage beating that resulted in Raymond's death. However, even if we were to find the verdicts inconsistent, it is a well-established principle of law that consistency in verdicts is not necessary. *See Dunn v. United States*, 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356 (1932); *Commonwealth v. Strand*, 464 Pa. 544, 347 A.2d 675 (1975); *Commonwealth v. Parrotto*, 189 Pa.Super. 415, 150 A.2d 396 (1959).

Thus, because appellant's underlying issue is totally void of any merit, the claim of ineffectiveness must fail. As a result, appellant will thankfully live out the rest of his life incarcerated. As for Raymond, this court can only hope that he has at last found peace. As unpleasant as it may be to read the facts of this case, we have chosen to publish our decision in an effort to spur all of us to vigilance in the protection of children at risk.

Judgment of sentence affirmed. Jurisdiction relinquished.

2. Appellant's counsel attempted to withdraw his appearance due to an inability to allege any meritorious issues and appellant's contention that counsel has been ineffective. The Petition to Withdraw was denied by a per curiam order of this court dated March 1, 1993.